IN THE UNITED STATES DISTRICT COURT
FOR THE STATE OF DELAWARE

| | | |
|---|---|---|
| GLORIA JAMES,<br>on behalf of herself and all<br>others similarly situated, | ) ) ) | |
| | ) | |
| Plaintiffs, | ) | C.A. No. |
| v. | ) | |
| | ) | |
| NATIONAL FINANCIAL LLC,<br>d/b/a LOAN TILL PAYDAY LLC, | ) ) | CLASS ACTION |
| | ) | |
| Defendants. | ) | |

## VERIFIED CLASS ACTION COMPLAINT

Plaintiff GLORIA JAMES, on behalf of herself and all others similarly situated, alleges as follows:

### Nature of Action

1. This is an action seeking temporary, preliminary and permanent injunctive relief, recovery of compensatory, consequential, and punitive damages, reasonable attorneys' fees and costs, and other relief arising from defendants' wrongful and unconscionable conduct, including breaches of the duty of good faith and fair dealing, and violations of 6 Del. C. § 2513 (the "Delaware Consumer Fraud Act") by NATIONAL FINANCIAL LLC d/b/a LOAN TILL PAYDAY, LLC (collectively, "Defendants").

2. Plaintiff is a borrower who took a loan from Defendants under unconscionable terms and conditions. Defendants advertise and market these loans as "payday loans," or easy (instant approval! at www.loantillpaydayonline.com) short-term credit to cover an unexpected emergency expense or a temporary cash flow problem, like a car repair or medical bill. In reality, however, Defendants prey on poor and unsophisticated borrowers, who do not understand the financial or legal implications of these loans, and

who can never repay the loan in two weeks.  Further, Defendants never have the intention

of making a short-term loan.   Rather than providing a quick "solution," Defendants

intend to burden borrowers with expensive, long-term debt, enforced by unconscionable

terms and conditions, which they know borrowers will have little or no ability to

understand or repay.  As a result, Plaintiff, and thousands of similarly situated borrowers,

suffers injury, harm, loss and damage.

3.  As an example, Plaintiff borrowed $200 from Defendants.  The yearly interest

rate or cost of this loan: 838.45% or $1,620.  Late payments are subject to a delinquency

charge of 5% of the unpaid amount.  Additionally, Defendants forced Plaintiff to grant

them a secured lien on her bank account, and authorization for Defendant to make

automatic withdraws, and release important rights of due process, including the right to a

jury trial, or judicially monitored discovery.

4.  To date, Plaintiff has paid Defendants an amount not less than $123 in interest

and penalties, and Defendants now state they will withdraw $75 from Plaintiff's bank

account every two weeks, a financial burden that is harming Plaintiff's ability to pay rent,

purchase food, and otherwise cover basic living expenses.

### The Parties

5.  Plaintiff GLORIA JAMES is a natural person residing at 806 W. 25th Street,

Wilmington, Delaware 19802 incurred a "payday loan" from NATIONAL FINANCIAL

LLC, doing business as LOAN TILL PAYDAY LLC, on or about May 7, 2013.

6.  Defendant NATIONAL FINANCIAL LLC is a New Jersey limited liability

company – whose registered agent is Joseph Bruno, with an address of 14 Wyndham

Road, Voorhees, NJ  08043.  NATIONAL FINANCIAL LLC does business in Delaware

as LOAN TILL PAYDAY LLC, a Delaware limited liability company – whose places of business are located at 1511 North DuPont Highway, New Castle, DE 19720; 119 North DuPont Highway, Smyrna, DE 19977; 20461 DuPont Boulevard, Georgetown, DE 19947; 1935 West 4th Street, Wilmington, DE 19805; 19269 Coastal Highway, Unit 1, Rehoboth Beach, DE 19971; 26370 Bay Farm Road, Millsboro, DE 19966; 1051 North Walnut Street, Milford, DE 19963; 101A North Maryland Avenue, Wilmington, DE 19804; 1719 White Clay Shopping Ctr., Pulaski Hwy. & Salem Church Rd., Bear, DE 19701; 9537 Bridgeville Center, Unit 4, Bridgeville, DE 19933; 2604 Philadelphia Pike, Claymont, DE 19703; 178A North DuPont Highway, Dover, DE 19901; 403 East Main Street, Middletown, DE 19709; 23442 Sussex Highway, Seaford, DE 19973; 123 East DuPont Highway, Millsboro, DE 19966; 4720 Kirkwood Highway, Wilmington, DE 19808.

## Jurisdiction and Venue

7.   This Court has exclusive jurisdiction over this civil action pursuant to 28 U.S.C. § 1332(d)(2) because the controversy exceeds the sum of $5,000,000, exclusive of interest and costs, and the Plaintiff is a citizen of a State different than one of the defendants, and Plaintiff believes there are more than a 100 class members.

8.   Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b)(2) as a substantial part of the events giving rise to Plaintiff's claims occurred in this judicial district.

## Background

9.   Defendants are engaged in the business of marketing, advertising, and making "payday loans," and regularly make "payday loans" within the State of Delaware.

10. Payday loans are small-dollar credit products that typically range from $100 to $500.  Plaintiff borrowed $200 from Defendants.  As was the case with Plaintiff, Defendants' loans are secured by a lien on, and electronic access to, the borrower's bank account.

11. Payday loans are advertised and marketed as loans to be paid in full, with interest, on the borrower's next payday.  If the borrower cannot pay off the full loan, plus interest, however, the borrower must pay an onerous interest charge, a fee to extend the due date, or take out a new loan to cover the expenses.  The loans do not amortize, so the fees paid do not reduce the principal owed.

12. Prominent organizations such as the Pew Charitable Trusts and the Insight Center for Community Economic Development have studied the effects of payday lending, and published findings concluding that the practice has a harmful effect not only on borrowers' finances and credit, but on the broader economy.  An in-depth study published by the Pew Charitable Trusts in 2012 discussed the payday loan industry and the effects of such loans on borrowers and society.  The study found that, while payday loan companies market their products as "payday," or short-term loans, the average initial loan is rolled over again and again, and remains open for five months of the year. Researchers found that payday lenders build their business models on the premise that borrowers cannot repay the loans in a two-week period, and that the loans become extremely profitable (to the lender) when it becomes a long-term debt. Researchers at the Federal Reserve Bank of Kansas City concluded that, "the profitability of payday lenders depends on repeat borrowing."  A copy of the Pew Charitable Trusts report is attached

hereto as Exhibit A.  A second report was issued in 2013.  A copy is attached as Exhibit B.

13. Costly debt terms drain borrowers' limited cash needed to cover basic living expenses such as rent and food.  Costly debt also impairs a borrower's ability to save, invest or otherwise spend on worthwhile consumer goods.  Onerous debt terms also increase the chances that a borrower will file for personal bankruptcy.  Indeed, at least fifteen states have banned payday lending, and Congress has prohibited payday lenders from targeting members of the military.

### Defendants' Practices

14. For years, Defendants have marketed, advertised and made "payday loans" to residents of Delaware, including Plaintiff.

15. Defendants aggressively market and advertise these loans as short-term credit solutions, quick access (*instant approval!*) to cash to pay for an unanticipated expense, such as a car repair bill, a needed home repair, or medical bill.  LOAN TILL PAYDAY LLC advertises its products with promises of instant approval and quick cash "to pay bills, avoid bounced checks, or cover unexpected expenses."  (See Exhibit C hereto.)

16. For years, Defendants have derived substantial revenues and profits from the sale of payday loans in Delaware.  Payday loans are only profitable to the lender when the short-term loan becomes a long-term obligation.  This is direct evidence that while Defendants market and advertise the loans as short-term credit, their actual business model and intent is to induce the borrower to extend the initial loan into a long-term, and unduly expensive loan.  As a result of the policies and practices of Defendants, borrowers

are routinely trapped in products that cause harm, including financial loss, hardship, and damage to personal credit.

17. Defendants intend to induce borrowers to enter into short-term loans, knowing that borrowers will be unable to pay off the loan in a short period of time, and extend the terms of the loans. As noted in the 2013 Pew report, lenders such as Defendants "rely on borrowers to use the loans for an extended period of time . . . in order to be profitable. . . . Yet lenders continue to structure their loans as a two-week fixed-fee product." (Exhibit B at 19.)

18. Defendants' representations and statements about the easy and quick access, instant approval, and the short-term nature of the loans are intended to induce borrowers, including Plaintiff, to enter into a loan agreement with Defendants.

19. Instead of disclosing that borrowers, including Plaintiff, would likely need extended terms to make her repayment obligations, Defendants remained silent, and induced borrowers, including Plaintiff, to borrow under expensive, onerous, and unconscionable terms.

20. Defendants conceal their true business models from borrowers, deceptively marketing their payday loans as short-term solutions even though defendants makes such loans with the expectation that borrowers will become saddled with a longer-term debt, structured in such as way as to make repayment all but impossible.

21. Defendants hide the fact that Defendants intend, and expect borrowers, including Plaintiff, to repay the loan on extended payment terms and pay interest rates exceeding 800% of the principal amount of the loan.

22. There is no limit to the amount that a borrower will pay unless and until the borrower repays the loan in full, including interest and any and all other fees pursuant to the terms of the loan document. Initial short-term obligations stretch into never ending cycle of inescapable debt.

23. Defendants never disclose that the overwhelming majority of their borrowers will never meet the two-week term to repay the loan, and are forced, at substantial, undue and unconscionable cost, to extend the terms of the loan or take a new loan. Defendants are silent on these known facts, which are material to any borrower making a decision to take a loan from Defendants.

24. Defendants entered into an agreement with Plaintiff knowing that the overwhelming majority of Defendants' borrowers are unable to pay loans within a two-week period, at substantial and undue cost to borrowers.

25. Defendants entered into an agreement with Plaintiff remaining silent on their expectation that Plaintiff would repay the loan together with onerous, expensive and unconscionable interest.

26. Defendants prey on borrowers who can be induced, like Plaintiff, to enter into an unconscionable loan, knowing that the borrowers are at a significant disadvantage to negotiate fair terms.

27. Defendants knowingly use their significant leverage to induce borrowers, including Plaintiff, to enter into loans with excessive, onerous and unconscionable terms. Indeed, the interest and penalties of borrowers' loans, including Plaintiff's loan, dwarf the principal amount of the loans.

28. Additionally, on a "take-it-or-leave-it basis," Defendants use their significant leverage to cause borrowers, including Plaintiff, to accept onerous, outrageous and unconscionable boilerplate terms, including terms that significantly, if not wholly, impaired Plaintiff's rights to due process under law. For instance, buried in the Plaintiff's loan document with Defendants are provisions including Plaintiff's purported waiver of a right to jury trial, waiver of a right to a public, civil proceeding in a court of competent jurisdiction, and waiver of a right to judicially-monitored discovery, and an opt-out deadlines for those waivers. The meaning of these terms, and the implication of agreeing to these terms are incomprehensible to a layperson, and particularly borrowers who typically use "payday loans." Plaintiff never understood the implication of these terms.

29. Defendants knowingly exploit their sophistication and their counterparty's equal lack of sophistication, lack of understanding and lack of bargaining ability, to impose unconscionable loan terms and unconscionable purported waivers of due process rights.

## Defendants' Contract is Unconscionable

30. Plaintiff's loan documents evidence on their face a gross imbalance in the parties' respective rights and obligations, and an exploitation of an underprivileged, unsophisticated borrower.

31. The Delaware Chancery Court, in the context of reviewing a contract under the uniform commercial code, has considered ten factors as an aid to determine whether a contract is unconscionable and unenforceable:

> 1.    The use of printed form or boilerplate contracts drawn skillfully by the party in the strongest economic position, which establish industry wide standards offered on a take it or leave it basis to the party in a weaker economic position.

2.    A significant cost-price disparity or excessive price.

3.    A denial of basic rights and remedies to a buyer of consumer goods.

4.    The inclusion of penalty clauses.

5.    The circumstances surrounding the execution of the contract, including its commercial setting, its purpose and actual effect.

6.    The hiding of clauses which are disadvantageous to one party in a mass of fine print trivia or in places which are inconspicuous to the party signing the contract.

7.    Phrasing clauses in language that is incomprehensible to a layman or that divert his attention from the problems raised by them or the rights given up through them.

8.    An overall imbalance in the obligations and rights imposed by the bargain.

9.    Exploitation of the underprivileged, unsophisticated, uneducated and the illiterate.

10.    Inequality of bargaining or economic power.

Fritz v. Nationwide Mutual Ins. Co., 1990 WL 186448 at * 4-5 (Del. Ch. 1990)

32. The Delaware Supreme Court has held that a contract is unconscionable if it is "such as no man in his senses and not under delusion would make on the one hand, and as no honest or fair man would accept, on the other" or "whether the provision amounts to taking of an unfair advantage by one party over the other." See Tulowitzki v. Atlantic Richfield Co., 396 A.2d 956, 960 (Del. 1978); see also, Fritz v. Nationwide Mutual Ins. Co., 1990 WL 186448, *4-5 (Del. Ch. 1990).

33. While not all of the factors are necessary to find unconscionability, all of the above factors are present with respect to the payday loans at issue in this case.

### Allegations Specific To
### Plaintiff GLORIA ADAMS

34. Plaintiff incorporates by reference the foregoing paragraphs as if fully set forth herein.

35. Plaintiff GLORIA JAMES is employed as a cleaning person for the Hotel DuPont.  She entered into loan agreement with Defendant LOAN TILL PAYDAY LLC on or about May 7, 2013.  A true and correct copy of the loan agreement is attached hereto as Exhibit D.

36. Plaintiff borrowed $200 to cover rent and groceries.  At the time she borrowed the principal, she did not understand fully the financial or legal terms of her loan document, contained in a 6-page, single-spaced document written in what appears to be 8-point font.  She did not understand that she had a right of rescission, or a right to decline ACH authorization.  She did not understand that she was committing to mandatory arbitration unless she opted out.  She did not understand how to opt out of the arbitration clause.  She had no knowledge of her legal rights, or the statutory obligations of the Defendants.

37. The day after she took her loan, Plaintiff broke her hand and it limited her ability to work and earn income to repay the loan.

38. Plaintiff made the first $60 payment on her loan, but then had insufficient funds in her bank account to cover the second installment due on May 31, 2013.  On June 14, 2013, Defendants withdrew $63 from Plaintiff's account, which included a late fee.  Defendants have now stated (without providing any written agreement) that they will automatically withdraw $75 from Plaintiff's bank account every two weeks, an event that puts Plaintiff perilously close to overdraft on a regular basis. Unable to cover even the

$60 bi-weekly payment, Plaintiff's obligations under her loan are now impeding her ability to meet other basic financial obligations such as rent, food and other important costs of living. Plaintiff is unable to repay the loan in full at this time, and believes that she will be unable to repay the loan in the near term.

39. Plaintiff has been unable to repay the loan in the short-term manner advertised. She is now locked into a long-term obligation with exorbitant interest rates, penalties and terms.

### Class Certification Allegations

40. This action is brought and may properly be maintained as a class action pursuant to Fed. Civ. P. R. 23. Plaintiff is typical of members of the Class (hereinafter, the "Class"), Plaintiff brings this action on behalf of herself and all others similarly situated, as representative of a proposed Class, because the proposed Class is so numerous that the individual joinder of all its members is impracticable, common questions of law and fact exist as to all members of the proposed Class, and Plaintiff's claims are typical of the claims of the members of the proposed Class.[1]

### Irreparable Harm to Plaintiff

41. Plaintiff incorporates by reference the foregoing averments as if fully set forth herein.

42. Without immediate injunctive relief, Plaintiff will be irreparably harmed by the unconscionable terms and conditions of Defendants' loan.

---

[1] Plaintiff's allegations for class certification do not constitute a motion for class certification, and Plaintiffs reserve the right to file a motion for class certification at the appropriate time.

43. If Defendants are permitted to continue to enforce their unconscionable terms, which include automatically withdrawing up to $75 every two weeks from Plaintiff's bank account, Plaintiff will face grave financial harm, including possible default on financial obligations such as rent, food and other important costs of living.

44. While the compensatory damages (for excessive interest, penalties) are possible to quantify, consequential damages resulting from Defendants' continued imposition of unconscionable interest and penalties, and Defendants' continued draw on Plaintiff's bank account, are impossible to quantify with any reasonable degree of certainty, and could not necessarily be remedied by a monetary judgment.

45. Further, the balance of hardships is in Plaintiff's favor.   As of June 14, 2013, Plaintiff has paid Defendants an amount not less than $123 in interest and penalties.   On the contrary, Plaintiff faces ongoing financial hardship described above.

46. Plaintiff respectfully submits that the contract is unconscionable.   Defendants are taking unfair advantage of Plaintiff and all others similarly situated.

47. The public interest is served if the Court enjoins enforcement of an unconscionable loan agreement.   Further, enjoining Defendants from enforcing an unconscionable agreement will prevent imminent and real financial harm to Plaintiff, and allow Plaintiff to focus her limited financial resources on daily living expenses like rent and food.  Finally, the Plaintiff is typical of "payday" loan borrowers and the Class in that she is the very type of unsophisticated borrower who does not understand fully the financial implications of the loan agreement and the predatory practices of the Defendants.   Enjoining the Defendants' from enforcing an unconscionable agreement

serves the public interest because it protects Plaintiff and the Class from Defendants' predatory and unconscionable lending practices.

## COUNT I
### Temporary Restraining Order (TRO), Preliminary and Permanent Injunction

48. Plaintiff incorporates by reference the foregoing averments as if fully set forth herein.

49. Defendants' loan documents evidence on their face a gross imbalance in the parties' respective rights and obligations, and the exploitation of an underprivileged, unsophisticated borrower, and the existence of an unconscionable agreement. The principal amount of Defendants' loan to Plaintiff is $200. The yearly interest rate is 838.45%. The total interest cost of the loan is $1,620. Late payments are subject to a delinquency charge of 5% of the unpaid amount. Defendants forced Plaintiff to grant Defendants a secured lien on her bank account, and authorization to take continued automatic withdraws from Plaintiff's bank account.[2] Interest will continue to accrue until the loan is paid in full, together with all outstanding penalties.

50. Plaintiff continues to pay Defendant, and is unable to satisfy the terms of the loan.

51. Defendants have received interest and penalties payments from Plaintiff Gloria James totaling an amount not less than $123. Defendants will suffer little, if any, harm if forced to cease taking money for actions described in this complaint.

---

[2] The loan agreement contains an opt-out of the ACH Debit Authorization under the misleading subtitle "Optional ACH Debit Authorization." The loan agreement also contains an opt-out of the arbitration provision under the misleading subtitle "Opt-Out Process." At no time did Defendants make any verbal representation to Plaintiff that she could opt-out of the ACH debit authorization or the mandatory arbitration provision.

52. Plaintiff requests that the Court enter a temporary restraining order, preliminary injunction, and permanent injunction that enjoins Defendants from collecting anything more on unconscionable contracts with Plaintiff Gloria James and all other Class members.

## COUNT II
### Breach of the Duty of Fair Dealing

53. Plaintiff, on behalf of herself, and the Class, repeats and incorporates by reference the averments set forth above as if fully set forth herein.

54. Defendants have failed and refused to deal fairly with Plaintiff, and with all others similarly situated, in connection with Defendants' business practices and imposing the unconscionable terms of the loan agreements.

55. As a direct result of Defendants' breaches of their duty of fair dealing, Plaintiff, and the Class, have suffered and will suffer injury as heretofore alleged.

## COUNT III
### Violation of the Delaware Consumer Fraud Act

56. Plaintiff, on behalf of herself, and the Class, incorporates by reference the averments set forth above as if fully set forth herein.

57. Defendants' conduct, as alleged above, is in violation of 6 Del. C. § 2513.

58. Specifically, as set forth herein, Defendants have engaged in deception, fraud, false pretense, false promise, misrepresentation, concealment, suppression or omission of material facts with its customers, with the intent that their customers rely on such conduct in connection with the sale or advertisement of its products.

59. As a direct result of Defendants' violations of 6 Del. C. § 2513, Plaintiff, and the Class have suffered and will suffer injury as heretofore alleged.

WHEREFORE, Plaintiff, on behalf of herself, and the Class, respectfully requests that this Court enter judgment as follows:

a.      Granting a temporary restraining order and preliminary injunction barring Defendants from taking funds from Plaintiff's account;

b.      Granting a permanent injunction barring Defendants from taking funds from Plaintiff's account and the account's of the Class;

c.      Entering an Order certifying the plaintiff Class, appointing Plaintiff as representative of that Class, and appointing undersigned counsel to represent that Class, all pursuant to Fed. R. Civ. P. 23;

d.      Awarding to Plaintiff, and the Class, damages, including compensatory damages, consequential and incidental damages, for Defendants' violation of the duty of good faith and fair dealing, Defendants' violation of 6 Del. C. § 2513;

e.      Voiding Plaintiff's loan and the loans to the Class, and awarding Plaintiff and the Class all amounts Plaintiff and the Class borrowed from, and paid to, Defendants pursuant to their loan agreement with Defendants;

e.      Awarding to Plaintiff, and the Class, punitive damages for Defendants' willful bad faith conduct;

f.      Awarding to Plaintiff, and the Class, pre- and post-judgment interest;

g.      Awarding to Plaintiff, and the Class, all costs of this action, including reasonable attorney fees;

h.      Awarding such other and further relief as this Court deems just and appropriate.

Dated: July 1, 2013
        Wilmington, Delaware

CROSS & SIMON, LLC

By:_____
    Richard H. Cross, Jr. (No. 3576)
    Christopher P. Simon (No. 3697)
    913 North Market Street, 11th Floor
    P.O. Box 1380
    Wilmington, Delaware  19899-1380
    (302) 777-4200

    -and-

    PIRES COOLEY
    Alexander J. Pires, Jr.
    Diane E. Cooley
    4401 Q St. NW
    Washington, DC 20007
    (202)905-6706
    farmerslawyer@aol.com
    dianecooley@pirescooley.com

    Attorneys for Plaintiff

16